Chief Justice Roberston,
delivered the Opinion of the Court.
In 179), John Dunlap, then resident in South Carolina, published his last will whereby, among other things; he devised some slaves, by name, to his daughter Jane, and other slaves to his daughter Cynthia Kid, and directed that, if either of his said daughters should die leaving no issue and the other surviving, the survivor should take “the part” devised to the one thus dying; and that, if both should die without issue, his wife, Elizabeth, should be entitled, “during her life,” to the perperty devised to them; aud that, if she should have no issue at her death, the said property should go to his “sister Isabella Howe and sister Jane Howe’s children.” Early in the year 1793, Cynthia Kid died childless, her father, mother and sister Jane surviving; shortly after her death the testator removed to Kentucky, and settled in Bourbon county, and there died in the year 1792. His will having been admitted to record in the county court of Bourbon, his daughter Jane claimed and took possession of all the slaves devised to her and to Cynthia Kid. She never married, but lived with her mother until 1820,when she died childless. The mother survived until 1825, when she died abo, without issue. In 1824, she made a marriage settlement with her husband, John Moore, (whom she had married in 18/8,J whereby they conveyed all her estate, (including that acquired by the death of her daughter Jane,) to trustees subject to such uses as she should, by her will, or otherwise, appoint. She afterwards, by her last will, directed, the trustees to appropriate the estate to public uses specified in the will.
Shortly after the death of Mrs. Moore, the heirs of Isabella Howe and Jane Howe sued her said trustees in detinue for the slaves in their possession devised to her during her life, and claimed under the executory devises which have been mentioned. The circuit court rendered a judgment for the plaintiffs *65 in (he action, and this court substantially affirmed that judgment. See Moore’s trustees vs. Howe’s heiis, IV Monroe.
After slaves, of Jq m.ue, have hcen surrenfud-ment, there is no remedy tore-cover for the detention of them between and the snr. render of *|j(™r.'en0^utr[le judgment.
Afterwards this suit in chancery was brought by the heirs of Jane and Elizabeth Howe against the trustees of Elizabeth Moore, asserting a claim to the hire of the slaves, (who were recovered in the action of detinue,) for the time which elapsed from the date of the judgment until the slaves were surrendered, and also praying for a decree for the value of a slave, the daughter of one of those devised to Jane and Cynthia Kid Dunlap, and who was sold in 1818, and taken by the purchaser to the state of Mississippi, and also for the value of three other slaves sold in 1817, and taken by the purchaser to Missouri; and also for the value of some slaves who had gone, or had been sent to the state of Ohio, and there settled; all of whom are embraced by the ex-ecutory devise under which the complainants claim.
The answer does not admit many of the material allegations of the bill, and denies that it contains any equity.
The circuit court sustained a demurrer to so muck of the hill as asserts a right to the hire, and decreed that the trustees should pay to the complainants, out of the trust estate, $2,500, the supposed value, at the date of the decree, of the slaves in Mississippi, Missouri and Ohio, From that decree both parties have appealed.
The decree on the de.murrer must be affirmed with costs. We know of no remedy for recovering for the detention of the slaves after the judgment in detinue, as they have been surrendered in pursuance of that judgment. On the contrary, it has been expressly decided that, in such a case, there is no remedy. See Head vs. Perry, (I Monroe. 253,) McClannahan’s heirs vs. Henderson’s heirs, (Ibid. 261.)
. The decree against the trustees, is erroneous. It Mrs. Moore did anything of which those entitled to the slaves on the contingency of her dying without issue, could rightfully complain, her personal representative would alone he responsible for her wrong. The trustees are not sued a- her personal representatives, but in their character of trustees *66 simply. In that character they must be considered ag purcjiasers_ Whether the deed to them could be successfully assailed by her creditors, or by any persons who might, by judgment, or otherwise, become the creditors of her estate, no means are furnished by this record for deciding; nor would it be proper to decide that question until the appellees shall, by a judgment, or derree, against her personal representative, establish a right to assail the deed, as ineffectual against them. And it would now be premature to determine, whether or not, her personal representative and the trustees could be sued, or whether a suit in chancery or any suit at all could be maintained upon the facts charged and proved in this case. It is sufficient to decide, that the appellants, being the only parties, are not liable in this suit, as trustees.
It does not even appear, that they are executor's. They hold as trustees under a deed, and not under the will.
If Mrs. Moore did, or omitted to do, any thing to the injury of the appellees, her representatives would be proper parties to a suit brought for reparation.
The principles settled by this court in the suit at law, (IV Monroe,) establish the legal right of the appellees to the slaves for whose value, the decree in this case was rendered. They may reclaim them whereever, they may find them, or might recover their value from any persons who may have converted them since the death of Mrs. Moore. If Mrs. Moore’s representatives can he made liable, in any event, for the value of the slaves sold in 1817-18, Jane’s representatives should be joined with them, unless Mrs. Moore was Jane’s executrix, and there be also an executor, or executrix, of her own will. But, whether the appellees can ever have any remedy against the representatives of either Jane, or her mother, for the sale made in 1817-18, or against the representatives of Mrs. Moore for the removal of other slaves to the state of Ohio, we shall not now intimate, because, as the proper parties have not been sued,we cannot decide on the merits of the case.
Mills and Brown for Moore’s trustees.
Wherefore, for want of parties, without considering any other point, it is decreed and ordered, that the decree of the circuit court be reversed and that the cause be remanded, with instructions to dismiss the bill without prejudice.